IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ARTUR ELIZAROV,

        Plaintiff,

v.

WESTSTAR MORTGAGE CORPORATION also known as WESTSTAR LOAN COMPANY and GOLDWATER BANK, N.A.,

        Defendants.

Case No. 23-CV-61669-AHS

**DEFENDANTS WESTSTAR MORTGAGE CORPORATION AND GOLDWATER BANK, N.A.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY ATTORNEY DWAYNE A. ROBINSON AND HIS FIRM KOZYAK TROPIN & THROCKMORTON**

Defendants, Weststar Mortgage Corporation ("Weststar") and Goldwater Bank, N.A. ("Goldwater," collectively, "Defendants"), hereby object and otherwise respond to "Plaintiff's Motion to Disqualify Attorney Dwayne A. Robinson and his Firm Kozyak Tropin Throckmorton from Representing Both Defendants Weststar Mortgage Corporation and Goldwater Bank, N.A. Based on a Non-Waivable Concurrent Conflict of Interest" ("Motion to Disqualify," ECF No. 14).

In his motion, Plaintiff Artur Elizarov seeks to delay the imminent dismissal of his frivolous claims against Defendants by seeking to preemptively disqualify their counsel. Plaintiff contends, with little if any supporting authority, that (1) he has standing to move to disqualify opposing counsel and (2) the mere potential for a later indemnity action by Weststar against Goldwater or Goldwater against Weststar creates a non-waivable conflict that precludes Defendants' attorney Dwyane Robinson ("Counsel") and his law firm Kozyak Tropin & Throckmorton ("the Firm")

from representing both Defendants in this lawsuit.[1]  Plaintiff is wrong.  As set forth more fully below, Plaintiff lacks standing to raise the purported conflict and the mere possibility of future indemnity claims does not create a non-waivable conflict in the present action.  Rather, any merely possible future claims for indemnity by Westar or Goldwater create, at most, a waivable conflict pursuant to the Rules Regulating the Florida Bar.  *See id*. at R. 4–1.7(b).  To eliminate any doubt, Defendants have executed written waivers regarding the potential conflicts posed by the joint representation here, including potential limitations on Counsel's and the Firm's duties of loyalty confidentiality, and attorney-client privilege.  For all these reasons, Plaintiff's Motion to Disqualify is wholly without merit and should be denied.  In support thereof, Defendants state the following:

## STANDARD OF DECISION

It is axiomatic that a party has a right to choose counsel.  *Platinum Props. Inv. Network, Inc. v. Sells*, 2019 WL 1670893, at *1 (S.D. Fla. Apr. 17, 2019).  Because of this presumptive right, courts only override a party's choice in counsel where there are "compelling reasons" to do so.  *Id*. (quoting *In re BellSouth Corp*., 334 F.3d 941, 961 (11th Cir. 2003)).  As the Eleventh Circuit explained: "The disqualification of counsel is an ***extraordinary measure*** that acts immediately to the detriment of the client by separating the client from chosen counsel." *Id*. (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001) (emphasis added)).  The moving party therefore carries an exceptionally high burden to establish the basis for

---

[1] Although not expressly made in his Motion to Disqualify, the arguments and authorities presented herein are equally applicable to any assertion of a similar conflict relative to Defendants' counsel at Wagner Hicks, PLLC, who are *pro hac vice* counsel in this action.  Given Plaintiff's history of duplicative, specious motion practice as recounted in Defendants' Motion to Dismiss [ECF No. 13] and Reply in Support of Wagner and Shergill Motions to Appear *Pro Hac Vice* [ECF No. 16], it is not outside the realm of reason that Elizarov would bring a subsequent motion against Wagner Hicks attorneys.  Defendants would ask the Court to similarly reject any such contention.

2

disqualification. *Id.* at *1–2. And the Eleventh Circuit "has specifically noted that disqualification should be resorted to sparingly and . . . only where there exists a reasonable possibility that the impropriety already has occurred." *Vital Pharms., Inc. v. Alfieri*, 585 F. Supp. 3d 1347, 1352 (S.D. Fla. 2022) (internal quotations omitted, ellipses in original) (quoting *Norton v. Tallahassee Memorial Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)).

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO SEEK DISQUALIFICATION AS HE DOES NOT FALL WITHIN ANY EXCEPTION TO THE GENERAL RULE REQUIRING PRIVITY.

As Plaintiff recognizes, "[i]n most cases, a stranger to the attorney-client relationship lacks standing to seek disqualification." *Pagidipati v. Vyas*, 353 So. 3d 1204, 1211 (Fla. 2d DCA 2022), *review denied*, 2023 WL 3596454 (Fla. May 23, 2023). Generally, only a party in privity of contract with an attorney may claim a conflict of interest and seek to disqualify the attorney. *Cont'l Cas. Co. v. Przewoznik,* 55 So. 3d 690, 691 (Fla. 3d DCA 2011). The only exception to this general rule is "where a conflict is such as clearly to call in question the fair or efficient administration of justice[.]" *See Pagidipati*, 353 So. 3d at 1211 (internal quotations omitted). However, such an objection should be viewed with skepticism, "for it can be misused as a technique of harassment." *Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1051 (Fla. 5th DCA 2004). Here, Plaintiff's vague, unsupported arguments fail to meet "the very high standard of calling in question the fair or efficient administration of justice." *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, 2016 WL 7130938, at *3 (M.D. Fla. Apr. 12, 2016).

Courts have permitted opposing counsel to seek disqualification under the "fair administration of justice" exception where (1) the movant "stands in the shoes" of a party who was or is in privity and (2) the nonmoving party acquires an unfair informational advantage through their counsel's related representation. *See Przewoznik*, 55 So. 3d at 693. For example, in *State*

3

*Farm Mutual Automobile Insurance Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991), an insurer was entitled to seek disqualification of its insured's prior lawyer as counsel for the remaining plaintiffs. *Id.* (discussing *K.A.W.*, 575 So.2d 630). Specifically, in *K.A.W.*, the law firm who had previously represented the insured, secured a purported conflict waiver from the insured and sought to represent the insured's wife and daughter in an action against that insured. *Id.* The *K.A.W.* court permitted the insurer to seek disqualification against the law firm, explaining the law firm had access to confidential information gained during the course of its prior representation of the insured. *Id.*

Courts have similarly applied the exception in instances of attorney "side-switching[.]". *Przewoznik*, 55 So. 3d at 691. For example, in *Kenn Air Corporation v. Gainesville–Alachua County Regional Airport Authority*, 593 So. 2d 1219 (Fla. 1st DCA 1992), the court applied the "fair administration of justice exception" where "a corporation sought disqualification of an attorney who had previously represented the corporation's predecessor-in-interest in matters that were substantially related to the underlying litigation." *Id.* (discussing *Kenn Air Corp.*, 593 So. 2d 1219). Similarly, in *Pagidipati*—a case Plaintiff block quotes, without substantive argument, in a half-hearted attempt to satisfy the standing requirement—the attorney representing the liquidating agent of the company at the heart of the litigation had previously represented the company itself, a company of which the defendants were still investors. 353 So. 3d 1204, 1212 (Fla. 2d DCA 2022). This is a far cry from the "concurrent representation" Plaintiff relies upon here.

In addition to lacking any analysis of the "fair administration of justice" exception whatsoever, Plaintiff's cursory reliance on *Pagidipati* is misplaced. *See* Mot. To Disqualify, p. 7 (quoting *Pagidipati*, 353 So. 3d at 1212). Despite initially discussing the "fair administration of

4

justice" exception in broad language, *Pagidipati*'s holding ultimately rested on plaintiff's counsel's prior representation of the company at issue in the litigation, a company owned in part by the non-privity defendants seeking to disqualify him. *Pagidipati*, 353 So. 3d at 1212. Here, Plaintiff's disqualification pitch does not assert the rights of one who would be directly impacted by the representation, nor does it demonstrate he is one who can "stand in the shoes" of a previously represented party as in *K.A.W.*, nor describe the type of attorney "side-switching" found to provide standing in cases like *Kenn Air* and *Pagidipati*.

Simply put: Plaintiff does not have a dog in this fight. *See Stopa v. Cannon*, 330 So. 3d 1033, 1036 (Fla. 2d DCA 2021). Nor does he explain how he, or the fair and efficient administration of justice, will be harmed if Defendants want to retain Counsel and the Firm's legal services despite the alleged potential conflict. *See id.*; *Houston Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, 2016 WL 7130938, at *3 (M.D. Fla. Apr. 12, 2016) (finding vague discussions insufficient "to meet the very high standard of calling in question the fair or efficient administration of justice").

Rather, this case is closer to the court's rejection of a plaintiff's standing to disqualify opposing counsel in *Anderson Trucking Service, Inc. v. Gibson*, 884 So. 2d 1046, 1051 (Fla. 5th DCA 2004). In *Anderson Trucking*, the plaintiff alleged a conflict of interest arising from defense counsel's continued representation two defendant-trailer owners in a trucking accident after that counsel's withdrawal from the driver/tractor-owner's defense. *Id.* at 1048. In rejecting the "fair administration of justice" exception and denying the plaintiff standing to disqualify defense counsel, the court noted that "[u]nlike the situation in *K.A.W.*, because the attorney for [the defendant-trailer owners] never represented [plaintiff], that attorney did not gain an informational advantage from confidences gained from a former representation of plaintiff that can be used

5

against [plaintiff] in the attorney's current representation of the [defendant-trailer owners]." *Id.* Like in *Anderson Trucking*, Plaintiff only alleges a potential conflict is between Weststar and Goldwater. Neither Counsel nor the Firm have ever represented Plaintiff. Rather, as in *Anderson Trucking*, here "it is not the alleged conflict that calls into question the fair administration of justice; rather, it is the disqualification of [Defendants'] chosen counsel. *Anderson Trucking*, 884 So. 2d at 1051. This Court should therefore find Plaintiff lacks standing to disqualify Counsel and the Firm.

To paraphrase the recent holding in *Stopa*, "[d]espite any conflict of interest that may exist between [Weststar] and [Goldwater], [Plaintiff] is a stranger to their attorney-client relationship. Their issue is of no concern to [Plaintiff]." *Stopa*, 330 So. 3d at 1038; *see also THI Holdings, LLC v. Shattuck,* 93 So. 3d 419, 424 (Fla. 2d DCA 2012) ("And while there is a limited exception to this standing rule for parties who 'stand in the shoes' of a former client, the Estate cannot demonstrate that it has any shoes whatsoever in which to stand to seek disqualification") (internal citation omitted). Plaintiff lacks standing to seek disqualification of Counsel or the Firm and his Motion to Disqualify must be denied.

## II. THE POTENTIAL CONFLICT RAISED IS WAIVABLE. DEFENDANTS HAVE BEEN INFORMED OF IT AND HAVE KNOWINGLY AND VOLUNTARILY ENTERED INTO CONFLICT WAIVERS.

Even if Plaintiff could establish standing for his Motion to Disqualify—he cannot—to succeed on it he must still demonstrate that Counsel and the Firm's representation of Defendants in this action violate one or more of the Rules of Professional Conduct Regulating the Florida Bar. *Vital Pharms., Inc.*, 585 F. Supp. 3d at 1350 ("To properly disqualify counsel, a court "must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule"). According to Plaintiff, the relevant Rule here is Rule 4–1.7(a), which provides that a lawyer must not represent a client if "(1) the

6

representation of 1 client will be directly adverse to another client; or (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client." Mot. To Disqualify, p. 6. Plaintiff states that Counsel and the Firm's representation violates this Rule because the purported conflict, the potential for future indemnity claims, is non-waivable. Mot. to Disqualify, pp. 9–10. Not so.

Importantly, Plaintiff does *not* allege that either Defendant has made any affirmative claim against the other or that Defendants have taken or must take inconsistent positions to defend *this* action. He simply asserts a potential conflict relative to ***unasserted***, ***potential*** future claims related to indemnification. As such, Plaintiff presents no conflict that cannot be waived upon each client's informed consent, confirmed in writing, as the Defendants have done in this case. *See, e.g., In re: Am. Marine Corp. v. Canaveral Port Auth.*, 2015 WL 12915705, at *3 (M.D. Fla. June 25, 2015); Declaration of Dwayne Robinson, attached as **Exhibit A**. Accordingly, the Motion to Disqualify should be rejected.

### A. Plaintiff fails to raise a non-waivable conflict; thus, the purported conflicts alleged are resolved by Defendants' knowing and voluntary conflict waivers.

Although Plaintiff cites to cases regarding potential tort and contract claims and vicarious liability, Plaintiff's alleged conflict rests on principles of indemnity—specifically, each Defendant's right to pursue some action against the other for damages it did not personally cause. As he explains on page 9 of his Motion to Disqualify:

> if Elizarov establishes that WestStar and Goldwater broke the law (i.e., WestStar unlawfully attempted to collect amounts that Elizarov was not liable for, and Goldwater failed to provide Elizarov with the mandatory monthly mortgage statements), then these defendants *may* seek indemnity from one another for the damages.

Mot. to Disqualify, p. 9 (emphasis added). From this, Plaintiff contends that "each defendant's ***potential*** claim against the other to recover that defendant's share of Plaintiff's damages creates a

7

quintessential conflict of interest for Robinson who cannot advise either of his current clients about these issues without violating his duty of loyalty to both." *Id*. Even if these potential claims represented a conflict of interest, it is a fully waivable conflict that has been waived by Defendants in this lawsuit, as confirmed in writing. Declaration of Dwayne Robinson, at ¶ 6.

A conflict under Rule 4–1.7(a) is subject to the exception found at Rule 4–1.7(b). This Rule provides the instances in which a conflict of interest may be waived and thereby informs what conflicts are non-waivable:

> (b) Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

In *State Farm Mutual Automobile Insurance Company v. Kugler*, the court addressed the scope of non-waivable conflicts, including: (1) where the attorney is a co-defendant;[2] (2) where the attorney represents multiple clients with claims to the same, finite pool of money, (3) in "situations when there is substantial discrepancy in the parties' testimony;" (4) where there is "incompatibility in positions in relation to an opposing party;" and (4) where "the existence of substantially different possibilities of settlement of the claims." 2012 WL 12868734, at *2 (S.D.

---

[2] Interestingly, a similar conflict *is* raised by the representation of Plaintiff by his attorney, domestic partner, and co-defendant, Ilya Alekseyeff, in the California Action currently pending between the Plaintiff and Goldwater. However, as in *Platinum Properties*, the allegations of civil conspiracy and the coextensive liability that follows, indicates an alignment of interests that will likely permit representation as long as Elizarov and Alekseyeff's factual positions do not become materially adverse. 2019 WL 1670893, at *2.

Fla. July 2, 2012), *report and recomm. adopted*, 2012 WL 12868735 (S.D. Fla. July 19, 2012). Plaintiff provides nothing even approaching a discussion of the non-waivable conflicts identified in *Kugler*—he indicates no instance in this case where Defendants have made adverse claims against one another, taken inconsistent factual positions, or provides any argument how this case presents substantially different possibilities of settlement. In fact, he deigns to discuss any Florida cases addressing the scope of fundamental, non-waivable conflicts not explicitly addressed in Rule 4–1.7(b). Rather, Plaintiff seems to rely exclusively upon Rule 4–1.7(b)(3), which plainly applies to adverse claims asserted ***in the same action*** and is inapplicable here where there are no such claims. *See* Mot. to Disqualify, at p.7-10; *see also* R. Regulating Fla. Bar 4-1.7(b)(3) (discussing assertion of adverse position "in the same proceeding"); *Kugler*, 2012 WL 12868734, at *3 (finding no conflict where defendants had not asserted adverse or incompatible positions "so far"); *see also Rodrigues Lorador v. Vasquez*, 2016 WL 7115976, at *1 (M.D. Fla. Jan. 14, 2016) (finding that one defendant created a non-waivable conflict of interest for shared counsel by asserting an affirmative indemnity claim against the other two represented defendants).

*Kugler* made clear that the "[p]ossibility of a conflict does nor bar representation." *Id.* (citing Comment to R. Regulating Fla. Bar 4-1.7). Instead, where jointly represented defendants do not actually advance adverse positions and do not assert incompatible arguments relative to the plaintiff's allegations, there is no present conflict of interest and any potential limitation on the attorney's representation, ***including potential limitations on the duties of loyalty confidentiality, and attorney-client privilege***, can be waived. *Id.* at *3–4; *see also Anderson Trucking,* 884 So. 2d at 1052 (claims of vicarious liability and negligent hiring did not create conflict of interest for counsel for two co-defendants after counsel's withdrawal of a third co-defendant). Plaintiff does not—and cannot—claim that Defendants actually advance adverse positions against one another

9

*in this action* or that Defendants assert incompatible arguments relative to his allegations. Indeed, as the Motion to Dismiss makes clear, Defendants' positions are entirely aligned—Plaintiff's Complaint is meritless and should be dismissed in its entirety with prejudice. *See generally* ECF No. 13. Thus, any potential conflict can be—and has been—waived by Defendants. Robinson Decl., ¶ _.

Because Plaintiff does not present a compelling reason—or any reason—sufficient to overcome his extraordinarily high burden to establish a basis for disqualification, the Motion to Disqualify must be denied.

### B. Plaintiff offers no authority supporting his assertion of a non-waivable conflict and such a finding threatens more than the instant Defendants.

It is undisputed that Plaintiff bears the high burden of establishing the basis for disqualification. *See* Mot. to Disqualify, pp. 8-10. Plaintiff relies solely on the "adverse position" provisions of Rule 4–1.7(b)(3) to assert that a conflict waiver is inappropriate here. Read broadly, Plaintiff's Motion to Disqualify argues that any potential indemnity obligation between co-defendants, without more, presents a non-waivable conflict. *Compare,* Mot. to Disqualify, at p. 7 *with id*. at pp. 9–10. It is telling, however, that Plaintiff offers absolutely no express authority for this proposition. In fact, such a finding could fundamentally alter the rights of litigants and how lawsuits are defended before this Court.

In fact, given Plaintiff's unequivocal claims of a substantial, non-waivable conflict, one would presume this Court has addressed the issue repeatedly. On the contrary, this Court and other United States District Courts within this Circuit have repeatedly addressed motions to dismiss under federal lending and similar laws where the mortgage servicer and mortgage owner were represented by the same counsel. *See, e.g.*, *Simpson v. Specialized Loan Servicing, LLC,* No. 8:22-CV-892-CEH-SPF, 2023 WL 2599413, at *1 (M.D. Fla. Mar. 22, 2023); *Roche v. Rushmore Loan*

10

*Mgmt. Servs., LLC*, No. 19-CV-24872, 2020 WL 1452346, at *1 (S.D. Fla. Mar. 25, 2020); *Manrique v. Wells Fargo Bank N.A.*, 116 F. Supp. 3d 1320, 1321 (S.D. Fla. 2015); *Guillaume v. Fed. Nat. Mortg. Ass'n*, 928 F. Supp. 2d 1337, 1338 (S.D. Fla. 2013).  None of these cases indicated a conflict, let alone a non-waivable one.  Perhaps this is because absent adverse claims against one another or indicia of conflicting factual positions, such defendants' interests are unified in opposition to a plaintiff's claims of wrongdoing.  *See, e.g.*, *Anderson Trucking*, 884 So. 2d at 1051; *Platinum Props.*, 2019 WL 1670893, at *2; *In re: Am. Marine Corp.*, 2015 WL 12915705, at *3.  That is certainly the case here, as set forth in Defendants' Joint Motion to Dismiss.  *See generally* ECF No. 13.

The Court's acceptance of Plaintiff's vague, unsupported arguments that potential indemnity obligations present a non-waivable conflict would threaten all defendants' right to choose their own counsel.  Plaintiff relies upon common law indemnity obligations to manufacture a potential conflict here.  *See, e.g.*, *Zazula v. Kimpton Hotels & Rests., L.L.C.*, 2011 WL 1657872, at *2 (S.D. Fla. May 2, 2011) (addressing common law indemnity claim, providing elements for same).  As such, Plaintiff's position would arguably apply to ***any*** action where two or more defendants' conduct is alleged to have caused an injury, as the potential almost always exists that one defendant could eventually claim the other was solely at fault.  Taken to its logical conclusion, the "non-waivable conflict" Plaintiff advocates here would effectively end joint defenses, driving up the cost of litigation.  This is a stark result, impermissibly invading the valuable right to select one's own counsel.

This deprivation is particularly onerous in cases like this one, taking away choice and imposing significant additional costs on sophisticated financial entities who have more than sufficient legal and regulatory experience to provide informed consent regarding such ***potential***

11

conflicts. But driving up the cost of this litigation is Plaintiff's endgame, as it has been throughout the parties' protracted litigation in the California Action. *See, e.g.*, ECF No. 13, Motion to Dismiss at pp. 1–2 (detailing multiple sanctions and other adverse rulings against Plaintiff and his attorney); ECF No. 15, Reply in Support of Wagner and Shergill Motions to Appear *Pro Hac Vice*, pp. 1–3 (same). Plaintiff's Motion to Disqualify is not only without legal merit, but it also flies in the face of accepted standards regarding a party's right to guide its defense and choose its own counsel. Plaintiff's Motion to Disqualify should therefore be denied.

## CONCLUSION

For the foregoing reasons, Defendants Weststar and Goldwater respectfully request the Court **DENY** Plaintiff's Motion to Disqualify.

Dated:   September 12, 2023.   Respectfully submitted,

By:   *s/Dwayne A. Robinson*
Dwayne A. Robinson, Esq. (FL Bar No. 99976)
KOZYAK TROPIN & THROCKMORTON.
2525 Ponce de Leon Blvd, FL 9
Miami, Florida 33134
Telephone: (305) 377-0659
drobinson@kttlaw.com

and

SEAN C. WAGNER (*Pro Hac Vice*)
Gursharon K. Shergill (*Pro Hac Vice*)
WAGNER HICKS PLLC
831 E Morehead St, Suite 860
Charlotte, NC 28202
Telephone: (704) 705-7787
Fax: (704) 705-7787
sean.wagner@wagnerhicks.law
gursharon.shergill@wagnerhicks.law

***Attorneys for Weststar Mortgage Corporation and Goldwater Bank, N.A.***